THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Don Antoine Jones,

        Plaintiff.

v.

Ramsey County Sheriff's Department,
Mark Bloom, Sheriff Bostrean, Sgt. Ridriguaz,
Sgt. L. Werner, Dr. Brad Dupri.

        Defendants.

Case No. 12-684(ADM/FLN)

**REPORT AND RECOMMENDATION**

---

Don Antoine Jones, *pro se.*
Tamara L. Novotny for Defendant Dr. Brad Dupre.
David Dietz, Assistant Ramsey County Attorney, for Defendants Bostrom, Bloom, Werner and Ridriguaz.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on Defendants' motions for Summary Judgment (ECF Nos. 83 and 89). The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that Defendants' motions be **GRANTED**.

        **I.    BACKGROUND**

Plaintiff Don Antoine Jones is currently incarcerated at the Minnesota Correctional Facility in Fairbault, Minnesota. Def. Dupre's Mem. in Supp. of Summ. J. 1, ECF No. 85. In November 2010, Jones was admitted to the Ramsey County Law Enforcement Center (LEC) to await trial for alleged violations of an Order of Protection. Def. Ramsey Co. Mem. in Supp. of Mot. to Dismiss 1, ECF No. 92. In July 2011, a jury found Jones guilty

1

on one count of stalking and two counts of violating a domestic abuse Order for Protection. Dietz Aff. 180-82, Ex. 30, ECF No. 93. On August 31, 2011, Jones was transferred to the Minnesota Correctional Facility in St. Cloud.[1] On March 19, 2012, Jones filed this lawsuit, alleging that his Eighth and Fourteenth Amendment constitutional rights were violated during his stay at the LEC. Compl., ECF No. 1.

### A. Jones' health issues and medications upon arrival at the LEC.

Jones suffers from coronary artery disease, bipolar disorder and gastroesophageal reflux disease. ECF No. 93 at 4. As of March 2010, Jones was taking 13 different medications. *See* ECF No. 92 at 3. When Jones arrived at LEC on November 5, 2010 he reported that he had been noncompliant with his medications for the previous several weeks. ECF No. 93 at 36. On November 7, 2010, Jones complained that the LEC nurse was not giving him the correct medication. *Id.* at 54. LEC confirmed his prescriptions with a pharmacy and acknowledged that Jones was receiving the wrong dose of one of his heart medications, which was subsequently adjusted pursuant to a Doctor's order. *Id.* at 55.

### B. Jones' November 2010 hospitalization and subsequent medication refusal.

On November 13, 2010 Jones reported that he felt spasms in his heart arteries and requested transport to the hospital for examination. *Id.*, Ex. 9 at 38. LEC staff checked Jones' vitals, which were normal. *Id.* Jones indicated that the pain had stopped. *Id.* LEC staff ordered an EKG, which was administered later that day. *Id.* The EKG was normal. *Id.* The next day Jones again reported that his arteries were "pulsating on [the] left side"

---

[1] At some point, Jones was moved from St. Cloud to Fairbault. *See* Minnesota DOC Inmate Locator at https://coms.doc.state.mn.us/PublicViewer/main.asp.

and requested transport to the hospital. *Id.* After LEC staff consulted with a medical doctor, Jones was taken to Regions Hospital where he was admitted for two days. *Id.* at 63. Another prescription was added to Jones' medication and he was instructed to follow up with his primary physician and his cardiologist for a routine, non-urgent exam in three to four weeks. *Id.*, Ex. 14.

Upon his return to LEC, Jones was informed that the Regions Hospital medical records would be added to his LEC medical record and that he could pick them up when he was discharged. *Id.* at 39. Jones became visibly upset with the LEC staff and an Officer had to intervene. *Id.* Thereafter, in protest for not being able to see his personal cardiologist, Dr. David Feldman, Jones refused his cardiac medications. *Id.* From November 18, 2010 through June 21, 2011, Jones signed Informed Refusal of Recommended Health Care forms on ten different occasions. *Id.* He also submitted several health care requests (a/k/a "kites") requesting to see Dr. Feldman at the Minneapolis Heart Institute. *Id.*, Ex. 16 at 100. LEC staff informed Jones that he was scheduled to see the LEC doctor and that he had no right to see his personal cardiologist. *Id.*, Ex. 9 at 43-44 and 102. Jones was informed that if he wanted to see his personal doctor, he would have to request a Furlough. *Id.*, Ex. 18 at 104.

LEC staff warned Jones about the potentially fatal consequences of refusing his heart medications. *Id.* at 42. LEC staff also offered Jones the opportunity to see a Regions Hospital cardiologist several times, but he refused. *Id.*, Ex. 19 at 109-110, 113, 115 and 116. Further, LEC staff offered Jones the opportunity to speak with his cardiologist, Dr. Feldman, by phone. *Id.* at 57. Jones refused this opportunity and also refused to sign a

3

Release of Information that would have authorized Dr. Feldman to send Jones' medication list to the LEC. *Id.* at 46.

### C. Jones' December 2010 hospitalizations and subsequent suicide watch.

On December 1, 2010 Jones was moved to a lower level cell, closer to where correctional officers are stationed, so that staff could check on him every 15 minutes. *Id.* Ex. 20 at 140. Two days later, on December 3, 2010 Jones reported feeling a "shooting pain" from the front of his chest to his back. *Id.*, Ex. 9 at 44. Jones was transported to Regions Hospital. *Id.* Jones' condition stabilized and he was returned to LEC the same day. *Id.* In light of his ongoing refusal to take his heart medication, Jones was placed on suicide watch. *Id.*, Ex. 21 at 139. In accordance with LEC suicide precautions, Jones was given finger food only and was placed in a Kevlar suit. *Id.* These precautions are taken so that Jones could not harm himself or others. Dietz Sec. Aff. 2, ECF No. 134. Jones remained in the Kevlar suit until cleared by a doctor on February 8, 2011. *Id.*

Jones was again taken to Regions Hospital on December 8, 2010 for stabbing chest pain that radiated down his left arm. ECF No. 86, Ex. 8. After being stabilized, Jones was returned to LEC. *Id.* Jones' inmate diary report indicates that he refused his heart medication consistently during the subsequent months and intermittently refused his food and recreation time. *Id.* 136-139. [2]

### D. Jones' attempts to contact his ex-wife from LEC in violation of the standing Order of Protection.

On December 29, 2010, LEC staff learned that Jones attempted to contact

---

[2] While on suicide watch, Jones was assigned a cell in the 5D pod, near the Correctional Officer stations.

4

his ex-wife by phone. *Id.* at 135.[3] This attempted contact was in direct violation of the standing Order of Protection. As a result, Jones phone privileges were revoked for three weeks, from December 29, 2010 until January 19, 2011. *Id.* However, on January 7, 2011, LEC staff noticed Jones using the phone. *Id.* LEC staff learned that Jones was again trying to contact his ex-wife by using another inmate's PIN number. *Id.* On January 8, 2011 Jones was moved to a 3C-pod in disciplinary segregation for these prohibited attempted contacts. *Id.* at 134. A disciplinary hearing was held and Jones was ordered to serve 10 days in segregation with three days credit for time already served. *Id.* On January 18, 2011, Jones was returned to a cell in the 5D pod. ECF No. 134 at 2.

On January 30, 2011, shortly after Jones was released from segregation, the St. Paul police were called to the home of Jones' ex-wife. ECF No. 86, Ex. 27 at 169. She reported that three calls from the LEC facility were attempted before the police arrived. *Id.* Two more calls were attempted while the police were in her home. *Id.* The police checked the phone records and confirmed that the calls were coming from the LEC. *Id.* No immediate disciplinary action was taken against Jones. ECF No. 134 at 2.

Several weeks later, on February 14, 2011, Jones again attempted to contact his ex-wife, this time, at her place of employment. ECF No. 86, Ex. 27 at 171. Staff moved Jones to segregation again that day. *Id.* at 149. On February 22, 2011, a state court judge

---

[3]
>   Individuals housed at LEC are given personal PIN numbers to make phone calls. ECF No. 92 at 13. When calls are placed from the LEC, an announcement is made informing the recipient that someone from the LEC is calling and that the call is subject to monitoring and recording. *Id.* To conceal the fact that a call is coming from the LEC, inmates will often call a friend who will then establish a three-way connection with another person. *Id.* Jones utilized this method in an attempt to contact his ex-wife numerous times in December 2010. *Id.*

signed an order that restricted Jones' phone privileges entirely, except for calls to his attorney. *Id.*, Ex. 29 at 179. Pursuant to subsequent instructions from two state court judges, Jones remained in segregation for approximately six months, until he was transferred from the LEC to the St. Cloud correctional facility on August 31, 2011. *Id.*, Ex. 23 at 128, 127, 125 and 122. Jones' visitation rights were revoked for the duration of his time in segregation. ECF No. 134 at 3.[4]

### E.  Jones' interactions with psychiatrist Brad Dupre.

Brad Dupre is a psychiatrist who works as an independent contractor for Ramsey County. *See generally*, ECF No. 85. Jones first saw Dupre in the LEC on November 23, 2010. *Id.* at 5. At this visit, Jones acknowledged refusing his mediations after the Region's Hospital visit. Novotny Aff., Ex. 10, ECF No. 86. Dupre noted no signs of bipolar disorder, but observed that Jones possessed very poor insight and judgment. *Id.* Dupre concluded that poor life coping skills were Jones' primary challenge. *Id.* Dupre increased Jones' Lamictal prescription to help with his impulsivity and discontinued Vistaril (an anxiety medication) because Jones' indicated that it was not helping. *Id.*

Dupre saw Jones again on December 8, 2010. ECF No. 86-10 at 2. His diagnosis was the same. *Id.* At this time, Jones was on suicide watch for refusing his heart medications. *Id.* On December 14, 2010, Dupre saw Jones while still on suicide watch. *Id.* Jones had been placed in a Kevlar suit due to "med non-compliance & his immature coping skills leading to potential for accidental harm." *Id.* at 3. Two weeks later Dupre saw Jones again and concluded that there was no evidence that a mental disorder was

---

[4]  During Jones' time in 3C pod segregation, he was permitted extra recreation time, the opportunity to earn more food trays in exchange for cleaning and was also allowed to have reading and writing material in his cell. These privileges would have been restricted in disciplinary segregation. *See* ECF No. 134 at 3.

6

responsible for Jones' decision to refuse his heart medications. *Id.* On February 8, 2011, Jones informed Dupre that he was refusing Buspar and Celexa (anxiety and antidepressant medications), claiming the medications "were supposed to be stopped already (by outside providers)." *Id.* at 4. In light of Jones' refusal to take these medications, Dupre discontinued them. *Id.* Dupre saw Jones several more times before he was transferred out of the LEC and his diagnosis remained the same. *Id.*

    **F. Claims alleged by Jones.**

Jones alleges that all five individual Defendants violated his constitutional rights. ECF No. 1. Specifically, Jones alleges that (1) Defendant Mark Bloom, Ramsey County Law Enforcement Center director, failed to properly train his staff in regard to Jones' Eighth Amendment rights; (2) Sgt. L. Werner, a Corrections Officer, violated his Eighth Amendment rights by ordering that Jones be placed in a Kevlar suit; (3) Sherrif Bostrean violated his due process rights by failing to address the issues Jones complained about regarding the treatment he received from LEC staff; (4) Brad Dupri, Ramsey County Jail Psychologist, violated his Eighth Amendment rights by refusing to prescribe the correct medications and for refusing to release Jones from suicide watch; and (5) Stg. Ridriguaz, a Corrections Officer, violated his Eighth Amendment and due process rights by holding Jones in segregation for more than six months and refusing to allow any visitation privileges. *Id.* at 1-7.

    **II. LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed,

a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences drawn from it should be made in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III. ANALYSIS

Jones brings his claims under 42 U.S.C. § 1983. Compl., ECF No. 1. Section 1983 requires plaintiffs to establish that (1) defendants were acting under the color of state law and (2) the conduct complained of deprived plaintiff of a "right secured by the laws of the United States." *West v. Atkins*, 487 U.S. 42, 48 (1988). Defendants do not dispute that they were acting under the color of state law, so the only question remaining is if Jones' constitutional rights were violated. For the reasons discussed below, the Court concludes that they were not and recommends dismissing all claims against Defendants.[5]

**A. Ramsey County Sheriff's Office.**

Ramsey County Defendants argue that the Ramsey County Sheriff's office is not an entity that can be sued. ECF No. 92 at 18. The Court agrees. *See, e.g. Anderson v. City of Hopkins*, 805 F. Supp. 2d 712, 719 (D. Minn. 2011); *Franco v. Grant,* Civ. No. 09-

---

[5] Defendants argue that Jones failed to specify that Defendants are sued in their individual capacity. Ramsey Def. Mem. in Support of Mot. to Dismiss 16-18, ECF No. 92. However, on the front page of his complaint, Jones states "sued in their 'individual' and 'official' capacities." ECF No. 1 at 1. Thus, the Court will consider Jones' allegations against Defendants in their individual and official capacities.

0552, 2010 U.S. Dist. LEXIS 15241, *6 (D. Minn. Feb. 22, 2010) ("A municipal police department is not a cognizable legal entity, or person, subject to suit under § 1983, but is simply part of a larger municipality."). Thus, all claims pled against the Ramsey County Sheriff's Office should be dismissed.

### B. Jones' failure to train claim fails as a matter of law.

Ramsey County and Mark Bloom argue that Jones has not properly pled a failure to train claim because he does not allege that his rights were violated pursuant to a policy or custom. ECF No. 92 at 31. Jones's allegations against Bloom are brief. He simply alleges that Bloom failed to "properly train and supervise his staff" which led to a lack of coordination with Jones' primary cardiologist and resulted in Jones being hospitalized. ECF No. 1 at 3. Even if this allegation could be construed to state a claim, the record supports granting Defendants' motion for summary judgment as a matter of law.

A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (internal citations omitted). A municipality, like a county, may be liable under § 1983 where a policy or custom of that entity caused the alleged constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Under certain circumstances, a municipality's failure to adequately train its police or correctional officers can be such a policy or custom. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."). In order to prevail on a municipal liability claim, "there must first be an

underlying violation of the plaintiff's constitutional right by a municipal employee . . . ." *Roach v. Fredericktown*, 882 F.2d 294, 298 (8th Cir. 1989).

Here, Jones cannot prove that Bloom or any other LEC staff violated his constitutional rights. Jones seemingly argues that his hospitalization is evidence of deliberate indifference to his serious medical needs. ECF No. 1 at 3. To the extent such a claim can be liberally construed, it fails because the record shows that LEC staff responded to his complaints of chest pain and transported him to the hospital when necessary. ECF No. 93 at 38 and 44; ECF No. 86, Ex. 7 and 8. Jones alleges no injury that resulted from any alleged delay on the part of LEC staff or as a result of his being taken to the hospital. For these reasons, Jones' failure to train claim fails and Bloom and Ramsey County's motion for summary judgment should be granted.

### C.  Jones fails to state a claim against Sgt. Werner and Sherrif Bostrean.

Jones' allegations against Werner and Bostrean are similarly brief. Against Werner, Jones literally alleges one sentence: "[Werner] was the officer who put me in the [Kevlar] suit on 12/30/10 after returning to the jail from the Regions Hospital ER." ECF No. 1 at 6. Against Bostrean, Jones alleges that he failed "to address and help [with] the issues Plaintiff was having with LEC employee[s]." *Id.* Jones also notes that Bostrean failed to respond directly to a letter from ACLU attorney Theresa Nelson. *Id.*

A pleading must contain enough facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Jones' allegations against Werner and Bostrean fail to meet this basic pleading standard. For this reason alone, all claims against Werner and Bostrean should be dismissed. Even if claims could be construed against Werner and Bostrean,

10

Jones' allegations fail as a matter of law. First, use of a Kevlar suit for inmates on suicide watch is permissible. Once an official knows of the risk of suicide, they must take reasonable measures to prevent it. *Coleman v. Parkman*, 349 F.3d 534, 538 (8th Cir. 2003). Kevlar suits prevent the use of clothes or bed sheets as asphyxiation devices. *See Turney v. Waterbury*, 375 F.3d 756, 758 (8th Cir. 2004) (concluding that officer who placed inmate who was a known suicide risk in cell with exposed ceiling bars and a bed sheet was not entitled to qualified immunity after inmate hung himself). Second, to the extent Jones attempts to plead a failure to train claim against Bostrean, it fails for the same reason that Jones' claim against Bloom fails. For all of these reasons, Werner and Bostrean's motion for summary judgment should be granted.

### D. Jones' constitutional claims against Dr. Dupre fail as a matter of law. [6]

Jones alleges that Dupre was deliberately indifferent to his medical needs by refusing to prescribe him Clexa (for depression) and Xanax (for anxiety). ECF No. 1. ¶ 5. Jones also alleges that Dupre failed to prescribe the proper dose of Lamictal (for bipolar disorder). *Id.* Jones alleges that being deprived of these medications caused him to lack focus, experience insomnia and lose weight. *Id.* Dupre does not dispute that Jones suffers from serious medical conditions, but argues that no evidence supports Jones' contention that he was deliberately indifferent to his medical needs. The Court agrees.

---

[6] Dupre also addresses an alleged medical malpractice claim based on Jones' complaint. However, Jones' memorandum in opposition to Dupre's motion for summary judgment makes clear that he intended only to plead an Eighth Amendment deliberate indifference claim against Dupre. Pl.'s Mem. in Opp'n 9, ECF No. 120 ("Jones's Allegation against Dr. Dupre is not [a]claim of medical malpractice."). As such, the Court will only analyze the allegations made against Dupre under the Eighth Amendment.

Pre-trial detainee's deliberate indifference claims are properly analyzed under the Fourteenth Amendment. *See Ervin v. Busby*, 992 F.2d 147, 150 (8th Cir.) (per curiam) (noting that pretrial detainees' claims are evaluated under Due Process Clause rather than Eighth Amendment), cert. denied, 510 U.S. 879, 126 L.Ed. 2d 176, 114 S. Ct. 220 (1993). "Although the Eighth Amendment has no application until there has been a formal adjudication of guilt, the Fourteenth Amendment gives state pretrial detainees—just as the Fifth Amendment gives federal pretrial detainees—rights which are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Smith v. Conway County*, 2014 U.S. App. LEXIS 13516, *8 (8th Cir. 2014) (citations omitted).

The Due Process Clause of the Fourteenth Amendment states "nor shall any State deprive any person of life, liberty or property, without due process of law." U.S. CONST. amend. XIV, § 1. Only government action that violates an individual's integrity in a way that "shocks the conscience" should be found arbitrary in the constitutional sense. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992). Courts apply a deliberate indifference standard, as utilized in Eighth Amendment jurisprudence, to analyze pretrial detainee's claims of inadequate medical care. S*ee Davis v. Hall*, 992 F.2d 151, 152-53 (8th Cir. 1993) (per curiam). This standard requires a plaintiff to establish that: (1) he or she suffered from an objectively serious medical need and (2) the prison officials knew of, but deliberately disregarded, that need. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000).

The Eighth Circuit defines a serious medical need as one that "has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73

F.3d 174, 176 (8th Cir. 1995). "A showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions." *Gibson v. Weber*, 443 F.3d 642, 646 (8th Cir. 2006). As explained in *Long v. Nix*:

> [N]othing in the Eighth Amendment prevents prison doctors from exercising their independent medical judgment. *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988). Prisoners do not have a constitutional right to any particular type of treatment. *Id.* at 327-28. Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment. *Taylor v. Turner*, 884 F.2d 1088, 1090 (8th Cir. 1989).

In this case, Jones claims that his depression and anxiety medications were discontinued without his knowledge. *See* ECF No. 120 at 4. The record does not support this claim. Rather, the record supports the conclusion that these medications were stopped due to Jones' refusal to take them. ECF No. 86, Ex. 9 and 10. At Jones' deposition, he admitted that Clexa was discontinued on February 8, 2010 due to his refusal to take the medication and that he never asked Dupre to reinstate the medication. *Id.* Ex. 14 at 58-59. Dupre increased Jones' dosage of Lamictal to "help with his impulsivity." ECF No. 85 at 5; Ex. 9 at 2, ECF No. 86. Again, Jones points to no evidence that suggests that a change in the dosage of Lamictal might constitute deliberate disregard for his medical needs. The only other medication alteration made by Dupre, as reflected in the record, was the discontinuation of Vistaril. *Id.* This was based on Jones' report that the medication "was not helping" and therefore does not constitute deliberate disregard. In sum, no evidence in the record points to a genuine issue of material fact in regard to whether any of Dupre's medication alterations constituted deliberate indifference to Jones' serious medical needs.

In addition, Jones contends that Dupre violated his constitutional rights by refusing to release plaintiff from suicide watch. ECF No. 1 at 6. Jones alleges that Dupre's lack of action caused him to be placed in the [Kevlar] suit, which caused him public embarrassment. *Id.* Dupre notes that he consistently concluded and documented that Jones was not suicidal from a psychiatric standpoint. ECF No. 85 at 24. As argued by Dupre, "[t]hat [Jones] was placed on suicide precautions by another official due to his well-documented and admitted refusal to take his heart medications had nothing to do with Dr. Dupre." *Id.* The Court agrees. Jones has not produced any evidence showing that Dupre had the authority to order Jones be released from suicide watch. In fact, Jones acknowledged at his deposition that Dupre did not control whether Jones appeared in court in a Kevlar suit. Ex. 14 at 87-88. Thus, Dupre's motion for summary judgment should be granted.

### D. Jones' constitutional claims against Ridriguaz fail as a matter of law.

Jones argues that Ridriguaz unconstitutionally placed him in segregation for over six months, discontinued visitation privileges and did not allow him to contact his attorney. ECF No. 1 at 7. Ridriguaz argues that placing Jones in segregation was necessary and reasonable and that although Jones' visitation rights were restricted, he was allowed to contact his attorney. ECF No. 92 at 26-30. The record demonstrates that Jones' constitutional rights were not violated.

To establish a Fourteenth Amendment violation for placement in segregation, an inmate "must identify conditions that impose 'atypical or significant hardship' in relation to the ordinary incidents of prison life." *Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The Eighth Circuit has held

that placement in segregation, even without cause, is not itself an atypical or significant hardship. *Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002); *see also Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (finding that a prisoner had no constitutionally protected liberty interest in remaining in less restrictive prison environment); *Kennedy v. Blankenship*, 100 F.3d 640, 642 n.2 643 (8th Cir. 1996) (stating that punitive isolation is not an atypical and significant deprivation).

In this case, Jones was placed in segregation because he repeatedly attempted to contact his ex-wife. Dietz Aff., Ex. 21 at 135. All of these attempted contacts violated the standing Order of Protection and resulted in new charges being filed against Jones. ECF No. 134 at 3. Tellingly, charges resulting from previous violations of the Order of Protection are what Jones was awaiting trial on in the LEC. Dietz Aff., Ex. 5. From March 11, 2011 through August 1, 2011, LEC officials were in regular contact with state court Judges Smith and Stevenson who indicated that Jones should be kept in the 3C-pod. *Id.*, Ex. 21 at 122-128.

Under these circumstances, Jones' constitutional claims against Ridriguaz fail as a matter of law. Jones cannot establish that his placement in segregation was atypical or caused a significant hardship. Jones was given three meals a day, provided one to two hours of recreational time each day and—despite his allegation to the contrary—was allowed to call his attorney at least thirteen times while in segregation. ECF No. 92 at 29. Jones' visitation rights were restricted during his time in segregation, but such a restriction does not constitute a significant hardship as it is expected that freedom of association will be limited in prison, particularly when placed in segregation. *See Knox v. Kempker*, 2007 U.S. Dist. LEXIS 11639, *12 (E.D. Mo., Feb. 16, 2007); *see also*

*Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) ("Freedom of association is among the rights least compatible with incarceration."). For all of these reasons, Ridriguaz's motion for summary judgment should be granted.

## IV.   CONCLUSION

Jones does not plead sufficient facts to state a claim against Defendants Bloom, Werner or Bostrean in their individual or official capacities. Even if claims against these Defendants could be construed, they fail as a matter of law. Jones' pleadings against Defendants Werner and Bostrean are insufficient to state a cognizable claim. Finally, no genuine issues of material fact are present in regard to Jones' alleged constitutional violations against Dr. Dupre and Sgt. Ridriguaz. Jones has not produced any evidence that their actions were deliberately indifferent to his serious medical needs or otherwise violated his constitutional due process rights.

## V.   RECOMMENDATION

Based on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' motions for Summary Judgment (ECF Nos. 83 and 89) be **GRANTED**.

DATED: July 29, 2014                                *s/Franklin L. Noel*
                                                    FRANKLIN L. NOEL
                                                    United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before August 13, 2014, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.