**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Don Antione Jones,

Plaintiff,

v.

Ramsey County Sheriff's Department, Mark Bloom, Sheriff Bostrean, Sgt. Ridriguaz, Sgt. L. Werner, and Dr. Brad Dupri,[1]

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 12-684 ADM/FLN

---

Don Antione Jones, pro se.

C. David Dietz, Esq., Kimberly R. Parker, Esq., Kyle M. Thomas, Esq., and Robert B. Roche, Esq., Ramsey County Attorney's Office, St. Paul, MN, on behalf of Ramsey County, Mark Bloom, Sheriff Bostrom, Sgt. Rich Rodriguez, and Lugene Werner.

Tamara L. Novotny, Esq., Cosineau McGuire Chartered, Minneapolis, MN, on behalf of Dr. Brad Dupre.

---

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Don Antione Jones' Objection [Docket No. 139] to Magistrate Judge Franklin L. Noel's July 30, 2014 Report and Recommendation [Docket No. 137] ("R&R"). In his R&R, Judge Noel recommended that Defendants Ramsey County Sheriff's Department, Mark Bloom, Sheriff Bostrom, Sgt. Rich Rodriguez, Lugene Werner, and Dr. Brad Dupre's Motions for Summary

[1] Ramsey County has corrected the spelling of names and titles of the accused Defendants. Sheriff Bostrean is Sheriff Bostrom, Sgt. L. Werner is Lugene Werner, and Sgt. Ridriguaz is Sgt. Rich Rodriguez. Dr. Brad Dupri has corrected the spelling of his name as well to Dr. Brad Dupre.

Judgment [Docket Nos. 83 and 89] be granted. After a thorough de novo review of the record and for the reasons stated below, Jones' objections are overruled and Judge Noel's R&R is adopted.

## II. BACKGROUND

Judge Noel's recitation of the factual background in this case is thorough and is incorporated by reference here. See R&R at 1-7. In summary, this case concerns Jones' alleged treatment while in custody at the Ramsey County Law Enforcement Center ("LEC") from November 5, 2010 to August 30, 2011. Jones was awaiting trial for violation of a protective order which required him not to contact his wife. During his pre-trial detention, Jones was charged again for violating the protective order when he allegedly used other inmates' phone privileges to call his wife.[2] When Jones arrived at the detention center, he was suffering from coronary artery disease and bipolar disorder. At the time of his detention, he brought with him prescriptions for numerous medications.

Over the course of his detention, Jones alleges Defendants denied him necessary medical care in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Jones also alleges that he was placed in segregated detention (often known as solitary confinement) and was mistreated in violation of his Fourteenth Amendment rights. Furthermore, Jones claims that Mark Bloom and the Ramsey County Sheriff's Office failed to properly train its officers to care for inmates like himself.

Judge Noel granted Defendants' motions for summary judgment for several reasons.

[2] On July 8, 2011, a jury found Jones guilty of stalking and violating a domestic abuse Order for Protection. C. David Dietz Aff. [Docket No. 93] 180-82.

First, Judge Noel concluded Jones' "failure to train" claim fails as a matter of law because Jones has not identified a policy or custom of Ramsey County or the Ramsey County Sheriff's Office which could have caused Jones' alleged constitutional violations. Second, Judge Noel found Jones fails to state a plausible claim against Werner and Bostrom. In the alternative, Judge Noel found the claims against Werner and Bostrom fail as a matter of law because placing an inmate on suicide watch and providing a Kevlar suit to prevent him from harming himself is not a constitutional violation. Similarly, Judge Noel granted summary judgment to Rodriguez because placing an inmate in segregation is not atypical and there is no evidence in the record supports the contention Jones' placement in segregation was atypical or a significant hardship. Finally, Jones complains that Dr. Bradley Dupre was deliberately indifferent to his medical needs. Judge Noel found no evidence that Dr. Dupre was indifferent to Jones' medical needs; therefore, Jones' allegations, even taken as true, do not rise to the level of a constitutional violation.

Jones objects to Judge Noel's grant of summary judgment for the Defendants. Jones does not cite any case law in his Objection. Instead, Jones offers a version of the facts which he argues creates a genuine issue of material fact and justifies overruling Judge Noel.

## III. DISCUSSION

In reviewing a magistrate judge's recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also D. Minn. L.R. 72.2(b). A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. The statute requires the Court review for clear error the decisions of a magistrate judge on non-dispositive matters. 28 U.S.C. §

636(b)(1)(A).

**A. Motions to Amend Complaint**

Before addressing the substance of the R&R, Jones has raised a preliminary issue. Jones argues that Judge Noel did not address his several motions to amend the complaint. Obj. at 8. Jones is mistaken. See Motions to Amend [Docket Nos. 41, 51, 62, 77] and Order, May 1, 2013; Order, Jul. 19, 2013; Order, Sept. 4, 2013; Order, Aug. 14, 2014 [Docket Nos. 44, 58, 73, and 138]. Judge Noel considered all of Jones' motions to amend his complaint. Judge Noel denied these motions to amend the complaint for several reasons. First, Jones did not submit a proposed amended complaint. Further, Jones' submitted documents did not allow Judge Noel to determine how the proposed amended pleading differed from the operative pleading and simply alleged more particular facts with ostensibly supportive exhibits. Since the proposed amended complaint did not include any new claims, adoption of the amended complaint was unnecessary. Under the clear error review of non-dispositive orders, Judge Noel's denial of Jones' motions to amend is affirmed.

The facts and exhibits submitted with Jones' proposed amended complaint were considered in Judge Noel's R&R, and the documents have been examined again here as required in a de novo review.

**B. Motions for Summary Judgment**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Matsushita Elec. Indus. Co., Ltd. v. Zenith

Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**C. Constitutional Violation Standards**

The Eighth Amendment deliberate indifference standard requires a plaintiff prove each individual who treated him actually knew of, yet deliberately disregarded, his serious medical needs. See Jones v. Minn. Dep't of Corrections, 512 F.3d 478, 481 (8th Cir. 2008).

The Fourteenth Amendment standard for considering a violation for placement in segregation requires an inmate "identify conditions that impose 'atypical or significant hardship' in relation to the ordinary incidents of prison life." Orr v. Larkins, 610 F.3d 1032, 1034 (8th Cir. 2010) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

**D. Objections**

Jones' objections to the R&R are muddled. Only Dr. Dupre is identified by name as a Defendant in the Objection. The remainder of the Objection is directed at LEC staff as a whole, either the medical staff in charge of monitoring his health or the prison staff in charge of his segregation.[3] In addition, Jones does not appear to object to the R&R's recitation of the

---

[3] Because Jones has not objected to the dismissal of specific defendants, with the exception of Dr. Dupre, Jones has not addressed his failure to state a claim against the Ramsey County Sheriff's Department, Mark Bloom, Sheriff Bostrom, Sgt. Rich Rodriguez, or Lugene Werner. This failure is sufficient grounds for rejecting the objections and adopting the R&R, again with the exception of Dr. Dupre. However, because Jones is pro se and currently

appropriate legal standards. Instead Jones objects to Judge Noel's application of the legal standard to the facts of his case. He argues that the evidence he has offered shows prima facie constitutional violations and displays sufficient evidence to constitute a genuine dispute of material fact. Taking all of Jones' allegations as true and taking into account the additional affidavits and accusations Jones makes in his Objection, the record demonstrates Jones' constitutional rights were not violated by LEC staff and Jones has failed to raise a genuine issue of material fact.

**1. Deliberate Indifference**

Jones does not contest a nurses' report that upon arrival at the LEC he had not been taking his medications for over two weeks and had been drinking. Dietz Aff. Ex. 9. Jones also reported suffering four heart attacks prior to his incarceration at the LEC. Jones' transition to taking his medications was difficult. Initially, the LEC nurses did not have the right dosage of at least one of the medications. When Jones complained that he thought the dosage was wrong, the nurses contacted his pharmacy and adjusted the levels of one of his medications pursuant to a doctor's orders. Jones continued to complain of chest pain. Jones claims he complained of chest pain repeatedly from the day of his arrest and asked to be transported to the hospital. Jones claims that only after he threatened to call his family to send an ambulance was he taken to the hospital on November 13. This story conflicts with the objective record evidence. The nurses reported that they checked Jones' vitals on November 13, but his vitals were normal. The LEC staff also ordered an EKG, which showed a normal reading. Even so, when Jones complained of

---

incarcerated with limited access to legal materials, the substance of his objections will be addressed.

chest pain the following day, the LEC staff took him to Regions Hospital, where he was admitted for observation for two days. Another prescription was added to Jones' medication and he was instructed to follow up with his primary physician and his cardiologist for a routine, non-urgent exam in three to four weeks. Upon his return to the LEC, Jones began refusing his medication. Jones claims he refused his medication because the LEC staff was still getting the prescriptions wrong. Jones also insisted he needed to be transported to consult with Dr. David Feldman, the cardiologist who first treated him. The record demonstrates LEC staff informed Jones he had no right to see his personal doctor, but the LEC staff doctors would continue to monitor and treat him and the Regions Hospital staff could be consulted.

Jones has failed to provide legal precedent for a legal right of detainees to consult with the doctor of their choice. When the LEC provided him the care of its own doctors and Regions Hospital's doctors, they were appropriately caring for Jones' serious medical needs. After the visit to Regions Hospital his prescriptions changed and the LEC switched at least one of his medications from an expensive name brand to a doctor approved generic brand. In addition, consistent with the recommendation of Regions Hospital, Jones did not need to immediately speak to a cardiologist. Furthermore, LEC staff had already scheduled Jones for a follow-up appointment with an LEC doctor. From November 18, 2010 through June 21, 2011, LEC staff could not convince Jones to take his medications and Jones signed Informed Refusal of Recommended Health Care forms on ten different occasions. Jones also refused to see a Regions Hospital cardiologist several times during this period.

Jones is not a doctor and he is not qualified to diagnose or prescribe his own medication. In his Objection, Jones demonstrates his confusion about his situation. Obj. 6. Jones states,

"The defendants claimed that Jones refused his opportunity and also refused to sign a Release of Information that would have authorized Dr. Feldman to send Jones' medication list to the LEC, but contrary the statement, Dr. Feldman was Jones' Primary Cardiologist who denied him and treated he for his health issues in the beginning, so why would need a authorization for the medication he prescription to Jones himself. [sic]" Id. To the extent the Court understands this statement, Jones did not comprehend how the medical system works at the LEC and did not understand the balance between his rights and the LEC's responsibilities.

Although Jones has clearly shown that he distrusted LEC staff and their medical advice and treatment, Jones has not shown, against objective evidence to the contrary, that the LEC staff were indifferent to his medical needs. LEC staff transported Jones to Regions Hospital on at least two more occasions, even though Jones continued to refuse medication. Viewing the evidence in the light most favorable to Jones, the LEC nursing staff's failure was only that of not building trust and understanding with Jones about his rights and responsibilities.[4] There is no evidence of deliberate indifference.

Contributing to the confusion and miscommunication, Jones was struggling with mental health challenges. Jones' objections concerning Dr. Dupre are unclear. On the one hand, Jones relies on Dr. Dupre's analysis of his mental state and argues that it proves Jones was not suicidal. (See more below). On the other hand, Jones continues to insist that his psychiatric medication was not correct or helpful; therefore, Dr. Dupre must have been deliberately indifferent to what would benefit Jones.

The R&R's analysis of Jones' deliberate indifference claim against Dr. Dupre is correct.

---

[4] Jones appears to have contributed significantly to this miscommunication.

Dr. Dupre met with Jones several times. He did not see evidence of bipolar disorder, but rather found Jones to be immature with very poor coping skills. Dr. Dupre worked with Jones to get his psychiatric medication correct, listening to Jones' complaints and trying to adjust dosage and prescriptions to treat Jones' mental challenges. Jones' belief that the medication was not working does not logically support a deliberate indifference conclusion[5] and Jones has offered no medical expert opinions that call into question Dr. Dupre's analysis.

**2. Atypical or Significant Hardship**

Jones was placed in two types of restricted detention, solitary confinement and suicide watch. On December 1, 2010, Jones was moved to a cell nearer to where correctional officers were stationed. Since Jones had been refusing his medication, this location allowed staff to more easily check on him every 15 minutes to monitor his health. On December 3, 2010, Jones reported chest pains and he was transported to Regions Hospital again.

On his return to the LEC, staff placed Jones on suicide watch in connection with his refusal of medication. In accordance with LEC suicide precautions, Jones was given finger food only and was placed in a Kevlar suit. The Kevlar suit is designed to prevent potentially suicidal inmates from harming themselves with bedding or clothes. Jones argues that there is no reason why he should have been placed on suicide watch and placed in a Kevlar suit. During his time in the Kevlar suit, Jones argues that he was humiliated by being brought to at least one court appearance in the suit. Jones also argues that being in the Kevlar suit and being deprived of certain bedding and clothes made him cold and miserable. Furthermore, Jones argues that the

[5] There is also evidence on the record that Jones sometimes refused his psychiatric medications in addition to his heart medication. Dr. Dupre cannot be liable for Jones' refusal.

finger food was not enough, as demonstrated by his recorded weight loss of nearly 40 pounds. Finally, he argues that he was supposed to take his medications with food, but the LEC staff would not deliver food at the same time as his medications. Jones was kept on suicide watch until February 2011.

Jones was also placed in "disciplinary segregation." In December 2010 and January 2011, LEC staff were alerted by St. Paul police that Jones had called his wife in violation of a court's protective order. The LEC revoked his phone privileges, except for phone calls to his attorney, and placed Jones in a segregated cell. Jones received a due process hearing on these accusations, after which LEC staff decided he should remain in solitary confinement for ten days. After being moved back to general population Jones called his wife again, using a fellow inmates' pin number. At least partly in response to these violations, and other violations of LEC rules, Jones was placed in solitary confinement.

Jones objects to this characterization of events. He claims that he was placed in segregation because he sent a letter about his medical treatment to the American Civil Liberties Union ("ACLU"), an organization that represents prisoners in cases against prison staff who violate an inmate's rights.

The uncontested portion of the record is clear that Jones did, on several occasions, attempt to contact his wife. Dietz Aff. Ex. 27. The record is also clear that Jones' correspondence with the ACLU was not blocked. The ACLU declined to take Jones' case. Jones was also permitted phone privileges for contacting his attorney. As discussed in the R&R, segregation of uncooperative and disruptive prisoners is not atypical. It is not atypical for an inmate who is abusing phone privileges to lose them, and for an inmate who attempts to thwart

these restrictions to earn a period of time in segregated detention. Jones' repeated violations of his restrictions makes his objection to removal from the general inmate population meritless.

As for suicide watch, although wearing the Kevlar suit may have been uncomfortable and embarrassing, the LEC is required to do what it reasonably can to safeguard the life of its inmate. Coleman v. Parkman, 349 F.3d 534, 538 (8th Cir. 2003). Jones' refusal of his medication, both for physical and mental health reasons, reasonably triggered the use of the Kevlar suit. And, as discussed in the R&R, the Kevlar suit has repeatedly been upheld as an appropriate response to a potentially suicidal inmate.

The only defendant Jones identifies by name in his objections is Dr. Dupre. Jones claims that when Dr. Dupre told LEC staff that Jones was not suicidal because of mental health issues, Jones should have been released immediately from suicide watch and wearing the Kevlar suit. Jones is confused about Dr. Dupre's role at the LEC. The record shows Dr. Dupre works as an independent contractor for Ramsey County. Jones has not produced any evidence showing that Dr. Dupre had the authority to remove Jones from segregation or from suicide watch. Even if Dr. Dupre had influence over the LEC staff's decision to keep Jones on suicide watch for mental health reasons, LEC staff could reasonably conclude from his refusal of heart medication that they could not leave Jones with any other means to do himself harm.

**E. Remaining Issues**

Jones attempted to add several new defendants to the case in his proposed amended complaints. To the extent Jones should have been allowed to add these individuals, Jones' allegations against them are precisely the same as the allegations against the named Defendants. Therefore, as discussed above, Jones' claims would be dismissed against the proposed

defendants for the same reasons as they have been for the named Defendants.

Furthermore, although Jones repeats the words "failure to train," Jones has not identified a Ramsey County policy or custom that caused the alleged constitutional violations. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). And as discussed above, Jones has not established a prima facie case of constitutional violation. Therefore, Jones' Monell claim is dismissed.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Don Antione Jones' Objection [Docket No. 139] to Magistrate Judge Franklin L. Noel's July 30, 2014 Report and Recommendation [Docket No. 137] is **OVERRULED**;
2. The Report and Recommendation is **ADOPTED**; and
3. Defendants Ramsey County Sheriff's Department, Mark Bloom, Sheriff Bostrom, Sgt. Rich Rodriguez, Lugene Werner, and Dr. Brad Dupre's Motions for Summary Judgement [Docket Nos. 83 and 89] are **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: September 17, 2014.